We'll hear argument next in Case 17-1606, Smith v. Berryhill. Mr. Kimberley. Mr. Chief Justice, and may it please the Court, the Appeals Council's decision in this case, dismissing Petitioner's request for review as untimely, was a final decision on his request for benefits. It brought the administrative review process to a close. After the Appeals Council's decision, there was nothing left for the agency to do, and the agency's denial of benefits became conclusive and binding. Now, the form and substance of the Appeals Council's decision in this case was a determination that Petitioner, by filing his application — excuse me, by filing his request for review out of time, had failed to exhaust his administrative remedies. And the question presented in this case is whether the district court has authority under Section 405G to review that decision. It did. The question of exhaustion ordinarily arises as a threshold matter, as an affirmative defense in any case challenging agency action, as this Court held in Jones v. Bach. Thus, if the government is not inclined to waive the Appeals Council's determination that a claimant failed to file a timely request for review, the government is free to raise it as an affirmative defense. And the district court, in turn, of course, has the authority to resolve the merits of that affirmative defense, to either sustain or overrule the government's affirmative defense of failure to exhaust by review — by reviewing the Appeals Council's decision for substantial evidence or otherwise abusive discretion. Ginsburg. What about after a hearing? Those words also, final decision after a hearing. There's no, as I understand it, there are never hearings before the Appeals Council. There is never a hearing before the Appeals Council, Your Honor, and that's true whether the Appeals Council grants review, denies review, or dismisses. Our understanding of the words after a hearing are that they embody an exhaustion requirement and that the best reading of the word hearing in Section 405G is to give it the same meaning that it has in Section 405B1, which is a hearing before an administrative law judge. And, of course, that is not a bar to review in this case because Petitioner had such a hearing. Now, Amicus's contrary position is that the district court in this case was required simply to take the Appeals Council's word for it, that he had filed his request for review out of time, and that upon the government's raising of that affirmative defense, the district court was to reflexively dismiss the case without considering at all whether the Appeals Council's decision was correct. Roberts Well, it's not take his word for it. It's that there's no judicial review. And if there's no judicial review, that's the end of it. That's not necessarily agreeing or disagreeing. It's appreciating the fact that the legislature has precluded review. Well, the legislature, I think that would be a departure from this Court's cases indicating that there is a strong presumption in favor of judicial review. Well, on that, yes, there's normally a presumption, but surely here the presumption is at least out of the picture, if not overturned, because you have a situation where Congress in general said no review under 405H. It's not the typical case that you get review in this situation. So that ought to be enough to eliminate the presumption. I don't think that's the right way of looking at 405H, Your Honor. I think what Congress was attempting to do with 405H was make clear that the sole avenue for review of final decisions by the Commissioner of Social Security is a complaint filed under Section 405G. As to the scope of 405G, I think the presumption in favor of judicial review, of course, applies. Any decision that is fairly characterized as a decision of the Commissioner of Social Security made after a hearing ought to be subject to review. And that's particularly in light of Congress's use of the word any in front of final decision. It does not limit it to any particular kind of decision. It does not limit it to decisions on the merits versus decisions based on procedural default. It says any final decision. And as the Court said in Mock Mining and Michigan Academy, in order to construe 405G as depriving courts of their traditional role as overseers of agency action in circumstances like these, there would have to be a clear statement on the face of 405G itself that that was what Congress intended. And there's no such clear statement on the text here. Indeed, the word final, as it appears, we think covers this case as a matter of the Appeals Council's decision in this case as a matter of plain text. The dictionary definition of this case is a matter of plain text. The government's position appears fairly straightforward to me. They think the scope of the court's review should be limited to the ground on which the appeal was dismissed, untimeliness. And presumably, they would say, was there substantial evidence for the appellate court's decision to dismiss on untimeliness? But I have a sense that you're arguing for a different kind of review, that you're – are you arguing that it's not just on the untimeliness question, but it's on the substance question of whether or not the merits of your appeal was right? I – we accept that if the government does not waive the question of exhaustion of administrative remedies, that the threshold issue has to be judicial review of the Appeals Council's determination on untimeliness in particular. But for – And so assume that we were to find that the court was wrong on that. But if we say the court was right, nobody goes any further, correct? On the merits of the Appeals Council's determination? Right. If the court says you didn't, it was untimely, that ends the matter. That's right, Your Honor. All right. Now, if we were to hold the opposite, that this wasn't untimely, who would decide the merits of the substance of whether what you argued was right on the merits? I think looking at the fourth sentence of 405G, it would be in the district court's discretion to reach the merits after overruling the Appeals Council on that question. But how to – skipping over the Appeals Council when the regime that's set up is after the ALJ, you go to the Appeals Council. I think it's one thing to say the Appeals Council was wrong in saying the suit was untimely. But if it is timely, why shouldn't the ALJ be the first person to determine the merits? Do you mean the Appeals Council? The ALJ has determined the merits in any case in which the question presented here arises. The question is whether, if upon a reversal of the Appeals Council's determination, that the merits would be determined by the Appeals Council. Oh, what I meant, I misspoke. I meant the Appeals Council. Right. You're right, the ALJ has spoken. But the next one in line under the agency progression would be the Appeals Council. You are urging that we skip over the Appeals Council and go back to consider the merits of the ALJ's decision. I think what we're urging is that it would be in the district court's discretion. And I think that follows ineluctably from the fourth sentence of Section 405G, which appears midway through the page on page 5A of the government's brief. And if I could, I'll just very briefly read that sentence. It says, The Court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. We think that is a clear textual rejection of the basic Chenery Rule. But I want to stress that I don't think there's actually a lot of daylight between our position and the government's position on this score, because as a practical matter, in the Eleventh Circuit, where the rule that we advocate has been governing for nearly the last 40 years, district courts generally do remand back to the Appeals Council when and if they determine that the Appeals Council made a mistake in dismissing the request for review as untimely. And certainly, there would be nothing in the text of the statute or our way of viewing this case that would prevent the district courts from doing that. Our point is simply that the government certainly, for example, could waive the question whether the Petitioner had exhausted his administrative remedies. And if it did waive that question, surely the district court would have the authority to move on to the merits of the case, just as it would if it found that some equitable exception to exhaustion had applied, as the Court did in Eldridge and City of Bowen. So our position is only that it would be a matter of discretion for the district court. But I want to stress that the position that we take on the merits of the question presented really is fundamentally the same as the position that the government takes. Our view is that a decision by the Appeals Council that a claimant has failed to file a timely request for review must be reviewable under Section 405G by a district court, and that to find otherwise would require the court to find that there is a clear statement on the face of 405G pointing the court in a different direction, divesting the courts of their traditional authority as overseers of agency action. There is no clear statement on the face of 405G to that effect. Roberts. Well, your clear statement is simply the reiteration of your presumption of reviewability point? That's right. Indeed, Your Honor, the presumption of reviewability recognized four terms ago in Mock Minding and before that in the Michigan Academy is not merely a tie-breaking canon. It is a clear statement rule. And absent a clear statement, the Court has held that there must be a judicial review. It is Congress's prerogative alone to exercise its discretion to divest courts of their traditional role as overseers of agency action, and unless it does so in a clear statement, Congress must be presumed to have intended judicial review. This is a sort of strange case because it's not that Congress has chosen to divest the courts of total review. It told us we have review in a circumstance. And so the question is, can the agency tell us what that circumstance is or what constitutes that circumstance? And that, I think, is a generic problem, which is, can the agency basically dictate to us the answer to that question? Well, I don't think that the agency can dictate to this Court the answer to the question whether there is judicial review. The agency can't. Sotomayor Exactly. Or what final judgment means. Well, and our view on that score is the agency, of course, has the authority to issue the rules and regulations that it deems necessary for a fair and efficient resolution of the claims before it. Sotomayor Without question. It has the authority to say when it's done. It does not have the authority to dictate whether there is judicial review of its decision when it is done and when that process is concluded. Thank you. I'll reserve my time. Roberts Thank you, counsel. Mr. Huston. Huston Mr. Chief Justice, and may it please the Court. The Social Security Appeals Council dismissal order in this case was a final decision because it marked the agency's last word on Petitioner's application for decision. Sotomayor Mr. Huston, if you believe that, is the government instructing its line attorneys to waive exhaustion of remedies in all appeals from timeliness demands? Huston Yes, during the pendency of this – until this Court rules in this case. We are, Your Honor, as we described in our brief, in our opening brief. We are no longer notifying claimants who receive an untimely dismissal – a dismissal for untimeliness from the Appeals Council that they cannot seek judicial review and where the cases are going to litigation, the Department of Justice is no longer invoking that – that rule. Sotomayor So why don't you just continue doing that irrespective of what we do? Should we have granted? Should we have just dug in this case? Huston Well, Your Honor, there is an entrenched, longstanding division among the circuits on the question whether the existing regulation of the – Sotomayor You've mooted the split. Huston Well, it – Sotomayor With your action. Huston Your Honor, again, the Court granted the petition in order to resolve the disagreement among the courts of appeals on the question whether the agency's regulation, which was published through notice and comment rulemaking, is a reasonable interpretation of the statute. Now, we believe – Roberts You haven't mooted the case, have you? Huston No. No. We certainly have not mooted this particular – Roberts Mr. Smith is still a loser, right? Huston Absolutely, Your Honor. That's correct. And he – he – Sotomayor No. Roberts I don't mean – of course, he lost. He lost, and on remand, Your Honor, we will continue to take the position that his dismissal from the Appeals Council was correct, that he did not timely exhaust his administrative remedies, and as a result, he cannot get judicial review. But the question on which the courts are divided is whether the existing regulation is a reasonable one. We submit that the answer to that question is no, again, because the plain text of the statute, under the plain meaning of final, if the agency's decision was conclusive, the agency has no more work to do, and the agency held a hearing in an – before an administrative law judge on Petitioner's application for Social Security – Roberts Your view is simply that requirement made after hearing is purely chronological. It doesn't have anything to do with the basis of finality at all. Huston Well, I think – I would say two things about that, Mr. Chief Justice. The first is that it is chronological in the sense that there is a reference to a hearing in Section 405b-1, 405h, as Your Honor mentioned, and in 405g. And we think it means the same thing in all three places, which is that the basic unit of decision by which this agency resolves claims for benefits is an ALJ hearing. But I don't think that I would – that it's quite right to say that it has nothing to do with finality. I think as the Court has said in Salfie, in Eldridge, and in City of New York, the phrase, final decision after a hearing in Section 405g, refers to the requirement that the claimant must fully exhaust his administrative remedies before a court reviews his entitlement to benefits. And we fundamentally agree with that proposition. This case is not about whether Petitioner is required to complete the entire administrative process and exhaust. He is. But the question, the basis for the Social Security Administration's decision, its final decision in this case, was a determination that he had failed to complete the administrative process. And that is a type of determination that courts review pursuant to a wide range of statutes that, just like this one, require a court to undertake judicial review only after the agency gives its final decision. We've cited several. If I could just understand your position correctly. Suppose that before the ALJ hearing happened, there was a filing that was not timely. So let's say the person had not timely filed a motion for reconsideration. What would happen then, according to the government? So there's one thing that I think is clear and one thing that is a little bit more difficult. The clear thing is that the claimant in that case would absolutely be required to continue to pursue the administrative process to essentially appeal up the chain the question of timeliness. He would be required to go seek a hearing and seek review from the appeals council on the question whether he had, in fact, made it. Okay. So but let's say he did that. Right. But in none of these steps is he ever granted a hearing because nobody needs a hearing to decide whether your filing was timely or not. So then what? So I think that's a more difficult case than this one that the Court doesn't have to resolve today. I think the right way to think about the problem is probably this Court's decision in Soffi. And I think that the logic of the Court's decision in that case is that where the agency has reasonably determined that it doesn't need a hearing in order to make a final decision on a particular issue, then the after-a-hearing requirement  But again, I don't think that's the case. I mean, Soffi is a constitutional avoidance case, isn't it? In part, Your Honor, the Court said that. But the Court is, I think, quite consciously addressing the reason why judicial review in that case was consistent with its understanding of a final decision and after a hearing. I think the Court said a similar thing in Bowen v. City of New York, which was not about a constitutional claim. That was an allegation that the agency had failed to properly apply its own regulation. I think that's the essential feature of the claimant's claim in this case, that the agency made a mistake in applying its timeliness regulation. That does seem to read out the made-after-a-hearing from the statute. So, Your Honor, again, I think that the reason why after-a-hearing is in 405g is because it's also in 405h and it's in 405b1. 405b1 is the basic instruction to the agency to hold a hearing in order to make a decision. And so the statute then says, because the agency typically needs to hold a hearing in order to make a decision, judicial review is available for a final decision after a hearing. I think it holds together in the ordinary course. What I think Salfie, Eldridge, and City of New York recognized is that there may be occasional cases where the agency resolves a particular question but doesn't feel it's necessary to hold a hearing. And in that case, there's at least a strong claim for judicial review. Ginsburg. Are you not agreeing with counsel who told us that after-a-hearing refers only to the ALJ, so I don't have to worry about the appeals court, the appeals counsel never holding hearings, because the hearing that counts is the one before the ALJ? Your Honor, we agree with that as a basic proposition. The hearing requirement we agree with, I agree with my friend, Mr. Kimberley, that 405G's reference to a hearing is talking about the same thing as 405B1 when it refers to a hearing. It's talking about an ALJ hearing. We had an ALJ hearing in this case, and so that's fine. I think the problem with the amicus' argument is that it would mean that appeals counsel decisions, of which there are approximately 22,000 every year, are never reviewable. And that simply would not make any sense, because the appeals counsel virtually never holds a hearing. They decide cases typically on the papers. And so I just don't think that is consistent with the statutory regime as it's been set up. I also agree with my friend, Mr. Kimberley, that I don't think the predictions by the amicus of a sort of flood of claims on the Federal courts have been borne out. That certainly hasn't been the experience of the Eleventh Circuit. Going forward, there's likely to be even fewer of these type of disputes, because as of 2018, so after the proceedings at issue in this case, but as of 2018, the administration authorizes e-filing, and that generates an electronic receipt. So the type of disputes about postmarks and when something was submitted, we expect there to be fewer of those in the future. You portray this as a straightforward question of statutory interpretation, correct? That's right, Your Honor. But the government's been on the opposite side of this for a long time. Is there an explanation for that? Your Honor, we take the text of the statute very seriously, and we had occasion once the Seventh Circuit weighed in on the other side of the split to reconsider the question, and we had occasion when the Petition for Arbitrative Certiorari was filed in this case to think very seriously about the question, and we became convinced that the statutory text is plain and dictates the result, and moreover, that the reasons that have been offered by the various circuits on the other side of the split just don't simply hold up. Breyer. There is an argument the other side, that the – look, you read the statute. There has to be an individual. There has to be a final decision. You see, an unnamed plaintiff class is not an individual within the meeting here. There has to be a final decision. A decision to reopen is not a final decision. That's Salfi. They mean the final decision on the merits not reopening. And it has to be made after a hearing. Well, that could be read as saying that the final decisions that are reviewable are final decisions that had something to do with the hearing, some kind of relationship. But that means – that would mean a decision that is made solely on procedural grounds and those procedural grounds relate solely to the appeals process does not fall within the statute. Now, that's a possible reading. So your response to that is what? I think it's inconsistent with the Court's decisions in Salfi, in Eldridge, and in City of New York, all of which have said that the way to read this statute, 405G, is as a waivable exhaustion of remedies requirement. And in all three cases, the Court authorized judicial review of a question that had not been before the ALJ as part of the disability proceeding. I'm glad you brought up Sanders, Your Honor, which is obviously the sort of the amicus' key case. But Sanders is really about a fundamentally different procedure. A reopening is something that is entirely unaddressed by the statute. And any time a claimant is seeking to reopen a claim, he will have received the one opportunity for judicial review that the statute guarantees him. I do want to spend just a moment, if I might, picking up Justice Ginsburg and Justice Sotomayor's questions about what judicial review would look like in the event that a court were to conclude that the agency's decision regarding timeliness was not supported by substantial evidence. We think it's very, very important for the Court to hold that at that time, if that were the decision of the district court, the only appropriate remedy is a remand. The Court should not just simply skip over the appeals counsel and proceed to decide the question. There's three basic reasons. The first is that we think it's compelled by this Court's decision in Heckler v. Ringer, which holds that where a claimant has a viable path to pursue relief in the agency, exhaustion will not be excused. And that would be exactly Petitioner's situation. He could go back to the appeals counsel and attempt to assert the grounds of error that he has. We also think that's consistent with this Court's entire body of precedent, starting from Chenery. And we think it's also consistent with Salphy, which recognized that one critical feature of exhaustion is to enable the agency to compile a record that is adequate for judicial review. That's exactly what the appeals counsel exists to do. I'd urge the Court to look at JA-26, which is Petitioner's request for appeals counsel review. He says the problem I have with the ALJ decision is that it was based on an incomplete record. That's exactly the type of question where the appeals counsel can bring its expertise to bear. And until it does so, this Court is really not well-suited to undertake the substantial evidence review that applies. Now, Mr. Kimberley referenced the fourth sentence of section 405G, the Court's power to affirm, reverse, or modify the agency's decision. That's not an unusual formulation. There are other statutes that have the same text. The FTC Act, 15 U.S. Code 45C, authorizes the same thing. But this Court has held in FTC v. Sperry, against Sperry and Hutchison, that judicial questions by the FTC are subject to the Chenery principle. So there you're not so focused on the text. No, Your Honor, I think the Court as a general matter has the authority in a case to affirm, modify, or reverse a decision. But the principle of Chenery is that it would be an abuse of that discretion to simply skip over the administrative process and substitute a decision that Congress has assigned to the agency for a decision made by a court. Now, in a more ordinary case where the entire administrative process is borne out and the appeals the agency has no more work to do, it would be appropriate for a court potentially to affirm, modify, or modify the decision. But in this case where the principle of Chenery is that the agency's decision has to be judged on the rationale that the agency gave. And so for all those reasons, we would urge the Court to hold that judicial review is authorized in this case, but to make clear that it must be limited only to the rationale that the agency gave for its decision. Thank you. Roberts. Thank you, counsel. Mr. Gupta. Mr. Chief Justice, and may it please the Court. The way that section 405G has successfully cabined judicial review for eight decades for the more than a dozen massive claims processes to which it now applies is to limit judicial review not just to any final agency action, but to a particular kind of action. Each of the words, a final decision of the commissioner made after a hearing, and especially those last four words, needs to be read together rather than in isolation because each word qualifies and modifies the kind of action in question. In SSI cases like this one under Title 16 of the Social Security Act, section 405G guarantees judicial review only for disputes over the eligibility or the amount of welfare benefits, the matters on which the Social Security Act itself requires a hearing and a final determination, not on procedures afforded under the agency's regulations. So the key words to start with, I think, are the ones that the Chief Justice, Justice Kagan, and Justice Breyer have all asked about, which are after a hearing. And I think the party's interpretation comes perilously close to reading, either reading the words out of the statute or reading them so that there isn't really any plausible relationship between the decision and the after-hearing requirement. And I think, actually, Congress chose those words carefully, and they meant there to be a relationship. Ginsburg But before we go into after a hearing, final decision. A decision of a tribunal dismissing a case on a procedural ground that means that the tribunal is disassociating itself from the case, it has spoken its last word, is generally considered a final decision. So before we get to your after hearing, do you agree that this determination to dismiss for untimeliness is a final decision, the end of the road for the agency? The agency has now disassociated itself from this case. Gupta Well, as you said, I don't think those words can be read in isolation, Justice Ginsburg. And I think even if you set aside after a hearing, you still have the words final decision of the commissioner. And I think that does some work here. Because one way to think about this is the way that cases come to this Court from the State courts under 1257. So if you have an intermediate State court decision, the petitioner has to first go to the State supreme court and file a timely petition. And only when they do that, if the State court says we're not taking the case, right, that then becomes the final decision of the State court system and it comes here. And the way that the Social Security process works is similar. When the appeals counsel denies review, that becomes the final decision. So the statute delegates to the Social Security Administration the ability to determine when it produces a final decision of the commissioner. Sotomayor Mr. Gupta, that's a somewhat awkward way of putting it in my mind. Certainly the agency has the full power under the act to say what steps the individual has to take to exhaust their process. But that seems and feels substantially different to me than it having the final word of whether someone has actually followed that process or not. And this comes perilously close to reading the words final judgment out of the act and saying that the agency can tell us what that means. It may tell us how to exhaust its processes, but I don't think it can tell us what constitutes the exhaustion of that process. Let me give you the extreme hypothetical. Let's say the agency here had said, they presented us with a proof of mailing that consisted a stamp by the post office, but we've never seen that stamp before, so we're not going to believe it. And the petitioner says, I'm going to a court because that's ridiculous. You know, the stamp is and brings us all sorts of proof or presents the agency with all sorts of proof that this is actual stamp by the post office. You would suggest that we don't have a right to tell the agency it made a mistake there? Okay, so a couple of responses, Justice Sotomayor. First, the analogy to the way cases get here in the State court system, I'd love to take credit for that analogy. That was actually the Solicitor General's analogy in Sims v. Apfel. That's the way they described the way this works. And I think this Court has said repeatedly, most recently in Sims v. Apfel, that the word final decision isn't fully defined by the statute and it leaves to the agency the ability to flesh out the process. So I think this Court has always recognized that the agency gets to decide how it produces a final decision of the commissioner. Now, I'll grant you, Justice Sotomayor, that in the typical exhaustion regime that we're used to, questions about whether exhaustion occurred goes to court. And in this respect, you know, this is different. It's more like a procedural default regime, if you'd like. And I think Congress chose this regime advisedly because it was dealing with a massive claims process. It could have chosen no review, which was true of the processes to which it compared this. So it was thinking about the war veterans process, longshoremen process, workers' compensation for Federal workers. All of those schemes at the time had no judicial review. And Congress could have chosen to do that. You didn't have judicial review of veterans' appeals until 1988. Congress could have chosen review of everything, which would have been untenable at a time in 1939 when you had 179 Federal district judges and you were about to unleash millions of claims onto the system. And so they chose to land somewhere in between. And the question is, where did they land in between? And I think, you know, we can talk about final decision in isolation, but I think, again, Congress chose all of these words, and they are all working together as a coherent phrase. And so I'd like to turn to the after-hearing requirement because I think it does a lot of work here. And in Califano v. Sanders, what this Court held is that after hearing, adopting Judge Friendly's reasoning means that the matter on which a claimant seeks review does not come within 405G if it's one that may be denied without a hearing or where the hearing would be afforded only under the agency's regulations and not by the Social Security Act itself. Mr. Gupta, I appreciate your heroic efforts there with that argument and your appointment to the Court. Thank you for your service. But on that, Judge Friendly also admitted his reading was the tyranny of literalism, I think, is what he complained about. So you argue that we should pay close attention to the statute. I've been listening to you for a number of minutes telling me I need to do that. And I don't see in the statute the words, a hearing pursuant to some statutory command. I see pursuant after a hearing. There was a hearing here. Let me take you then to the text, and I think, Justice Gorsuch. So, I mean, an argument from literalism seems to me it might have to live with the tyranny of literalism, Mr. Gupta. Sure. And, you know, I think it's important to emphasize here that we're not only dealing with the text that Congress enacted in 1939. I mentioned that Congress has incorporated this statute by reference a dozen times over the years, almost every decade, in fact, since the statute was enacted. And one time that they did that was in 1972, when they created the SSI system, the system under which this case proceeds. So what you actually need to look at first, I think, is Section 1383c3. That's if you pick up the Solicitor General's brief, the gray brief, and you look at page 9a, the text is set forth there. And that is not a text that I think the parties have paid much attention to. But what it says is, quote, the final determination of the Commissioner of Social Security, after a hearing under paragraph 1, so there's your reference, Justice Gorsuch, a hearing under paragraph 1, shall be subject to judicial review as provided in Section 405G of this title to the same extent as the Commissioner's final determinations under Section 405 of this title. So then, in order to understand what hearing the statute is referring to, we have to look at paragraph 1. And so the – so the – what I just read to you was at page 9a of the Petitioner – of the SG's appendix. Now I'm going to read you from the reference to paragraph 1. And that is at the SG's brief, this is the appendix to their brief at 7a. And it's a little bit of a long sentence. It's at the bottom of the page. And it starts with the words, the Commissioner. So this is where the SSI provision is telling us what hearing is required for SSI claimants like Mr. Smith. And it says, and I'm going to just skip a few words as I read, but the Commissioner of Social Security shall provide a hearing to any individual who is or claims to be an eligible individual and is in disagreement with any determination under this subchapter. Remember that the statute used the word determination. So it's saying a determination under the Act with respect to eligibility of such individual for benefits or the amount of such individual's benefits. Mr. Gupta, I hate to interrupt, but I understand you. Your basic argument boils down to this, that no hearing was required here under the various terms of the statute. That's right. Okay. And I accept that, for argument's sake, at least. I still go back to 405G on judicial review, and it doesn't say any of that. It just says an individual after any final decision, and Justice Ginsburg has walked us through that carefully, made after a hearing, gets to go to court. Right. It doesn't say this particular kind of hearing to which he is entitled. It says a hearing. Right. Maybe one given, imagine that, the executive branch giving a hearing as a matter of grace. Right. Okay. So what about that? Well, I think, Justice Gorsuch, that's precisely the argument that this Court rejected in Califano v. Sanders. If I don't read Sanders, I have parsed Sanders, and I'm sure you have too. Right. And it is rather cryptic on this score, and it doesn't directly adopt Judge Friendly's concern about the tyranny of literalism.  So Justice Gorsuch, I mean, of course, it's a precedent of this Court, and I do think it's on, you know, the only precedent precisely on this text, but if you want to set aside, I do think that you can get there just under the text, and I think, remember, Congress enacted the statute that I was just reading you in 1972, and it's the only reason 405G applies in this case, and so it did so a number of times, and I think that reflects some acquiescence on Congress's part on the way that the system was functioning. Last question, I'll stop, I promise. I promise. You'd agree that the Social Security Administration could grant a hearing that it is not statutorily compelled to give? Absolutely. All right. Absolutely. But I think, you know, these questions, I welcome them, because I think I'm glad we're turning to Section 1383, because I think it's critical here. It tells you what hearing. It says that there was that kind of hearing here. No, there wasn't. There wasn't? There was no hearing on whether he's entitled to benefits or not? There was a hearing on the question of benefits, but that's not the matter on which Mr. Smith is seeking judicial review. I'm sorry. There was a hearing. There was a hearing of the kind set forth in paragraph 1, and then there was a final decision. Now, it turns out that the final decision rested not upon a ground having to do with the hearing, but on a different ground, a ground having to do with appeals counsel procedure. Okay? We agree on that? Yes. Okay. Now, you are a Social Security applicant, and you would like some money, because you think you're entitled to it. So you go to the hearing examiner, and he says what's now called, what used to be called the hearing examiner. Now it's the ALJ. Okay. You go to the ALJ, and he says no, and you think he's wrong. So you would like to appeal, and they say go to the appeals counsel. The appeals counsel says, hey, you made a mistake. You lose. Does he care whether the mistake was, well, the hearing examiner was right on the The mistake was that the hearing examiner did something procedurally wrong or right? The appeals counsel procedure was wrong or right? What does he care what the mistake is? All he knows is that there is a final decision of the agency which was made after a hearing. Now, why would you write such a thing after a hearing? Because whether or not there is a hearing will weed out a lot of worthless applications, and it will weed out the people who didn't go through the right procedure to begin with. But we are dealing with people who did. And so what do they care? And why would a body of law that presumes when you lose, you get judicial review, suddenly without saying so in the statute, make some kind of exception as to whether the reason you lost was a procedural one having to do with the appeals counsel or whether the reason you lost is because both the hearing examiner and the appeals counsel thought you didn't, weren't entitled to it? Why? That's not a tyranny question. That's a purposive, consequential. Right. And basic question for those who don't want to get bogged down in the weeds. Okay. So, I mean, Justice Breyer, I do think that this is, it's important to emphasize what I am defending is the status quo. This is the way it has worked under the Social Security regime and all of the other regimes, the dozen regimes I mentioned, with the exception of the 11th Circuit, for eight decades. And I think that's important because Congress had something in mind here. Congress was not. Yes, I told you what it had in mind. It had in mind making sure there's a hearing, which means we weed out the bad ones. Right. No, but Congress was not concerned. Congress was concerned with ensuring that this entire massive process was governed by law. It was not directing cases into the Federal courts for error correction purposes. It was doing so to ensure that there would be a judicial oversight of the process and that when people had exhausted completely through the process and had a determination on the merits, that that merits determination on eligibility or amount would be reviewed in court. And I think it's important that Congress chose those words carefully in 1972. They said, they were aware that, of the way that this had been, this language had been interpreted. And if you look in the appendix to the Green Brief, the amicus brief, we laid out the dozen schemes where Congress has expressly incorporated 405G. And many of those are compensation regimes. They're benefits regimes. And in each of them, or many of them, Congress either directly or by implication limited review to the decision of compensation or eligibility for benefits. What do you say about the application of the presumption of review, which is one of the predicates to the question? Right. I think, you know, you asked about this, Mr. Chief Justice, earlier and mentioned 405H. And I think 405H goes a long way to addressing the question. The Court has said about the presumption in favor of judicial review that it's just that. It's a presumption. And it's no substitute for looking at the specific words of a statutory text and its purpose in history. So here we know Congress took the unusual step in 405H of saying there is no review at all in Social Security cases by any tribunal except through this very specific channel that we're creating. And then that channel linked the decision with the hearing. And I think Congress did that advisedly. And then they followed up again in 1972 for this specific regime and said, we are linking the determination that can be reviewed with the hearing requirement. The link is the word after. It was after here. It's true. It was chronologically after. Before the baddies were in and out, there was a hearing, and now we just have a different reason. The reason is procedural rather than the reason being substantive review on the merits, which was the four words that were my basic question, why does that matter? So that was true in Califano v. Sanders as well. There had been an ALJ hearing. It was after in that sense. But that is not what mattered. What mattered is whether the statute requires a hearing. Otherwise, you could have review where the agency just denied a hearing where there should have been a hearing. That would not make much sense. And you would also disincentivize the agency from affording claimant-friendly processes for fear that they would result in review. So instead, it makes much more sense, and this is what Judge Friendly said and what this Court said in adopting his reasoning, to look to what the statute requires. Kagan. But, Mr. Gupta, on your theory, doesn't that mean that merits decisions of the Appeals Counsel would not be reviewable? I don't think so. And I think that's because the Appeals Counsel would be – would still be reviewing the matter on which a hearing is required. So, again, my test is, Justice Kagan, you ask, is the thing on which the claimant seeks judicial review the thing on which the statute requires a hearing? So when the Appeals Counsel reviews that thing, it's still the thing, the eligibility or the amount of benefits on which there would be judicial review, providing, of course, that they exhausted the process provided by the agency and had a final decision of the commissioner. Then it would be a final decision of the commissioner after the hearing required by the statute. And so – It's so out of sync with the normal understanding of a dismissal on procedural grounds. Let's just take a case in the Federal court and there's a motion to dismiss for improper venue. The court says, I agree, out with the case. That certainly qualifies as a final decision that would be reviewable. Right. And I don't deny that, Justice Ginsburg, that, you know, final means different things in different contexts. And if all we had was the word final here, this would be a very difficult assignment for me to discharge. But luckily, we have other words in the statute and they mean something. And I think Congress chose these words carefully and they chose these words to address the situation in which they wanted not no review, not review of everything, but review of the merits, the substance. And then I think it's important that Congress chose this same regime and expressly incorporated it over and over again when it had these massive claims processes, when it wanted to ensure that there would be judicial review of the merits, but not judicial review of every fact-bound or discretionary dispute about compliance with the agency's internal processes. Because the judiciary does not add a whole lot of institutional competence to this very friendly, claimant-friendly process when those kinds of cases are being channeled into Federal court. Well, the judiciary adds something when the appeals counsel is wrong in how it enforces its procedural rules. Right. No, of course. And, you know, and there is — And that's of value. That's a traditional — That's right. And, of course, there is still review of constitutional questions and there will be mandamus review for the egregious situation. But I think the floodgates concerns were what were animating Congress. It comes through loud and clear. Well, I'm sorry to interrupt. On the floodgates, but if that's all you're reviewing, the flip side of my prior question, if that's all you're reviewing, that's not going to be overturned very often. There probably won't be the floodgates because presumably the appeals counsel is correctly applying its timeliness rules and other procedural rules in most cases. Right. So that's at least what the Solicitor General suggests, that the floodgates concern is not a problem because the narrowness of the review. Well, in all of the previous cases where this regime has come up, the Solicitor General's office has actually stressed the floodgates concerns, and I think that's important. What about the practical experience? We're told in the circuit that applies the — yes, this is a reviewable final decision. There have been no floods. So I think a couple of points on that, Justice Ginsburg. First of all, that's one circuit. It's very different when this Court says it. That's one system, the Social Security system. And even in that circuit — first of all, it's difficult to tell with Social Security cases because they're largely sealed, but we've looked at them. And what you see are they're mostly fact-bound disputes or disputes about these discretionary decisions. And I think even there, you've had difficult questions that have come up under this Bloodsworth rule about how far does it extend into these other processes, like the Medicare process. Medicare Part A, Part B, Part C, Part D, all of these massive regimes incorporate 405G. And I think the Solicitor General really understates the floodgate concerns by not grappling with all these other regimes that will be implicated by a decision if you were to adopt the party's position. At page 15 of the Solicitor General's reply brief, their only response really is to shrug and say, well, that's not before this Court, you know, but it may be before this Court in the next case. And I think part of the problem here is just a flood of individual cases. There are thousands of cases that are decided on timeliness or procedural grounds by the Social Security Appeals Council. There are many other thousands of cases in all of these other regimes. And then there are going to be questions about the extent to which, if you were to adopt the party's position, it applies to all of those regimes. Kagan. Does it feel a little strange, Mr. Gupta, to be making this argument when the Solicitor General is not? It is. I suppose that's why I'm here. I mean, one is tempted to say, if they don't care, why should anybody else? Well, I think it's a good question, Justice Kagan. And I think one reason is that Congress cared about designing a scheme in this way with limited judicial review. And I think the Court should care because I think the Federal judiciary has an institutional reason. But why should we? Yeah, but as an institution, shouldn't we be worried when we're being kicked out of review? No. Meaning, I worry about having no avenue for supplicants to ensure that an administrative process is fair to them. Right. And if you've got a final decision saying, no, after a hearing's been given to you, it should, as Justice Breyer said, shouldn't you have that one last crack at the apple? Well, what I'm defending is the way that the process has worked since 1939. I think it is Congress that is the branch of government that principally decides that kind of policy question about where to strike the balance. And Congress is evidently satisfied because they have adopted this regime over and over again. It has worked. It has stood the test of time. There's no suggestion that the regime is broken. And the SG tells us, not you, that it's not that bad. I go back to Justice Kagan's point. Right. And I think, Justice Sotomayor, I think one thing the SG really hasn't grappled with, they haven't said anything to you about what happens under those dozen other claims processes. They haven't said anything to you about the other kinds of procedural determinations. What about res judicata determinations? What about, you know, belated requests for belated appeals? They haven't explained how their interpretation, if you were to adopt it, would apply to the mine run of cases under all of these schemes. And I think, you know, this is why in schemes like this, the court generally steps back and allows people who are expert in designing processes like this to, you know, design them. And if Congress has a problem with it, Congress can step in and do something about it. But this is like, it's a solution in search of a problem. You know, all of a sudden, after eight decades, the Solicitor General's office has looked at this text and decided it means something else from what it has always meant, and has come to this Court. They haven't changed the regulations. They've come to this Court, and they've asked you to adopt that interpretation. And I think the Court should be concerned for its own institutional interests and for the institutional interests of the lower Federal courts that the balance be struck the way Congress designed it. Thank you. Roberts. Thank you, counsel. Mr. Kimberly, three minutes. Thank you, Mr. Chief Justice. I'll make just a few brief points. The first core fundamental point is that the decision in this case was final in both the dictionary sense of the meaning of the word and in the traditional administrative law sense of the word. And it came after a hearing, because Petitioner had a Section 405b1 hearing before an administrative law judge. By the plain terms of Section 405g, that is all that Petitioner needed to bring to his case and get review before the district court. I want to say something very briefly about floodgates. My friend, Mr. Gupta, raised concern about appeals involving the Medicare scheme. There are roughly 15,000 appeals before the Medicare Appeals Council, the equivalent of the Appeals Council in this case. That's an order of magnitude less than what occurs in the Social Security scheme. And what's more is those review in those cases is subject to an amount in controversy requirement that filters out many more additional cases. So there's very little reason to think that Medicare would be a basis for thinking that there would be a floodgates problem here. And finally, I'll just say something briefly about Califano against Sanders, since that came up. What I would say is that a denial of reopening is not a decision, final or otherwise, on an initial determination of benefits. And what this Court said in Califano is you get one chance to get judicial review. It is when you reach the conclusion on the initial determination of benefits. That is all that we are asking for. The Sixth Circuit's position is that when you reach the end of that review and you get kicked out on procedural grounds, you don't get judicial review. There is simply no basis in the text of the statute for reaching that decision. And one final point, Justice Sotomayor, you raised the question whether we could simply – whether the Court could simply dismiss the case on the basis of the government's now waiver of this issue. Because a number of the courts have determined that it's a jurisdictional question, I don't think the government's waiver would solve the problem in those circuits, including the Sixth Circuit. So I don't think that's a viable option here. And for all of those reasons, and if there are no further questions, we ask the Court to reverse. Roberts. Thank you, counsel. Mr. Gupta, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.